NUH N. LOI
NAME

F02732
PRISON NUMBER

Calipatria State Prison

CURRENT ADDRESS OR PLACE OF CONFINEMENT

Calipatria, CA 92233
CITY, STATE, ZIP CODE



FILED

SEP 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

NUH NHUOC LOI ,
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

LARRY SCRIBNER, WARDEN ,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

EDMUND G. BROWN Jr. ,
The Attorney General of the State of
California, Additional Respondent.

Civil No **'08 CV 1619 BTM PCL**

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   Superior Court of California, County of San Diego

2. Date of judgment of conviction: April 18, 2005

3. Trial court case number of the judgment of conviction being challenged:
   SCD184449

4. Length of sentence: 40 Years to Life

CIV 68 (Rev. Jan. 2006)

cv

5. Sentence start date and projected release date: October 20, 2005

6. Offense(s) for which you were convicted or pleaded guilty (all counts):
Sexual battery by restraint (243.4(a)), attempted forcible oral copulation (228a(c) and 664), forcible oral copulation (288a(c)), kidnapping for forced oral copulation (209(b)(1)), robbery (211), making a criminal threat (422)

7. What was your plea? (CHECK ONE)

   (a) Not guilty       ☒

   (b) Guilty          ☐

   (c) Nolo contendere  ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)

   (a) Jury          ☒

   (b) Judge only    ☐

9. Did you testify at the trial?

☐ Yes ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?

☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:

   (a) Result: Judgment was affirmed

   (b) Date of result (if known): February 28, 2007

   (c) Case number and citation (if known): D047552, Citation: Unpublished

   (d) Names of Judges participating in case (if known):

      Alex McDonald, Judith Haller, James McIntyre

   (e) Grounds raised on direct appeal:

      (Please see Opening Brief attached)

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

   (a) Result: Petition for Review was denied

   (b) Date of result (if known): June 13, 2007

   (c) Case number and citation (if known):

      S151372, Citation: None

   (d) Grounds raised:

      (Please see Opening Brief attached)

**13.** If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

    (a)  Result: N/A

    (b)  Date of result (if known):

    (c)  Case number and citation (if known):

    (d)  Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

**14.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
  ☐ Yes  ☒ No

**15.** If your answer to #14 was "Yes," give the following information:

    (a)  **California Superior Court** Case Number (if known):

    (b)  Nature of proceeding:

    (c)  Grounds raised:

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
        Yes    No

    (e)  Result:

    (f)  Date of result (if known):

**16.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
  ☐ Yes  ☒ No

**17.** If your answer to #16 was "Yes," give the following information:

  (a) **California Court of Appeal** Case Number (if known):

  (b) Nature of proceeding:

  (c) Names of Judges participating in case (if known)

  (d) Grounds raised:

  (e) Did you receive an evidentiary hearing on your petition, application or motion?
          Yes    No

  (f) Result:

  (g) Date of result (if known):

**18.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes ☒ No

**19.** If your answer to #18 was "Yes," give the following information:

  (a) **California Supreme Court** Case Number (if known):

  (b) Nature of proceeding:

  (c) Grounds raised:

  (d) Did you receive an evidentiary hearing on your petition, application or motion?
          Yes     No

  (e) Result:

  (f) Date of result (if known):

CIV 68 (Rev. Jan. 2006)
cv

**20.** If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A

## COLLATERAL REVIEW IN FEDERAL COURT

**21.** Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

☒ Yes ☐ No        (If "Yes" Skip to #22)

    (a) If no, in what federal court was the prior action filed?

      (i) What was the prior case number?

      (ii) Was the prior action (Check One):

          Denied on the merits?

          Dismissed for procedural reasons?

      (iii) Date of decision:

    (b) Were any of the issues in this current petition also raised in the prior federal petition?

          Yes        No

    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

          Yes        No

---

**CAUTION:**

- **Exhaustion of State Court Remedies:**  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:**  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:**  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

    (a) GROUND ONE:

The prosecution failed to meet the requirements of Penal Code section 784.7, in order to try petitioner in San Diego County for an alleged sexual offense which occurred in Ventura County.

**Supporting FACTS:**
(Please see Opening Brief attached)

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

    (2)   Case number or citation: S151372

    (3)   Result (attach a copy of the court's opinion or order if available):
        Petition for Review was denied

**(b) GROUND TWO:**

Penal Code section 784.7 is unconstitutional as it violates petitioner's Sixth Amendment right to a trial held within the venue where the alleged offense occurred.

**Supporting FACTS:**

(Please see Opening Brief attached)

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes  ☐ No.

If yes, answer the following:

(1)   Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

(2)   Case number or citation: S151372

(3)   Result (attach a copy of the court's opinion or order if available):
Petition for Review was denied

CIV 68 (Rev. Jan. 2006)

cv

**(c) GROUND THREE:**

The retroactive application of Penal Code section 784.7 violated petitioner's constitutional rights to due process of law and the prohibition against ex post facto laws.

**Supporting FACTS:**

(Please see Opening Brief attached)

**Did you raise GROUND THREE in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1)    Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

(2)    Case number or citation: S151372

(3)    Result (attach a copy of the court's opinion or order if available):
       Petition for Review was denied

CIV 68 (Rev. Jan. 2006)

cv

**(d)** GROUND FOUR:

The charge in count three, forcible oral copulation against Diane C., was time-barred and cannot be resurrected by subsequent legislation.

**Supporting FACTS:**

(Please see Opening Brief attached)

**Did you raise GROUND FOUR in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1)   Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

(2)   Case number or citation: S151372

(3)   Result (attach a copy of the court's opinion or order if available):
Petition for Review was denied

CIV 68 (Rev. Jan. 2006)                    -9-                              cv

**(e) GROUND FIVE:**
There was insufficient evidence to support the charge of attempted forced oral copulation against Audrey C.

**SUPPORTING FACTS:**
(Please see Opening Brief attached)

**Did you raise GROUND FOUR in the California Supreme Court?**
    Yes ☒ No.☐
If yes, answer the following:
    (1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

    (2) Case number or citation: S151372

    (3) Result (attach a copy of the court's opinion or order if available):
        Petition for Review was denied

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes    ☒ No

24. If your answer to #23 is "Yes," give the following information:

    (a) Name of Court:

    (b) Case Number:

    (c) Date action filed:

    (d) Nature of proceeding:

    (e) Name(s) of judges (if known):

    (f) Grounds raised:

    (g) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes      No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing . . . . . . . .   Joseph Bryans
                                                350 S. Magnolia Avenue, El Cajon, CA 92020

    (b) At arraignment and plea . . . . . . .   Joseph Bryans
                                                350 S. Magnolia Avenue, El Cajon, CA 92020

    (c) At trial . . . . . . . . . . . . . . . . . . . .   Joseph Bryans
                                                350 S. Magnolia Avenue, El Cajon, CA 92020

    (d) At sentencing . . . . . . . . . . . . . .   Joseph Bryans
                                                350 S. Magnolia Avenue, El Cajon, CA 92020

    (e) On appeal . . . . . . . . . . . . . . . . .   Patrick Ford
                                                1901 First Avenue, Suite 400, San Diego, CA 92101

    (f) In any post-conviction proceeding .   Joseph Bryans
                                                350 S. Magnolia Avenue, El Cajon, CA 92020

    (g) On appeal from any adverse ruling in a post-conviction proceeding:
                                                Patrick Ford
                                                1901 First Avenue, Suite 400, San Diego, CA 92101

CIV 68 (Rev. Jan. 2006)                          -10-                                    cv

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒Yes  ☐No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐Yes  ☒No

   (a)  If so, give name and location of court that imposed sentence to be served in the future:

   (b)  Give date and length of the future sentence:

   (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
        Yes        No

**28.**  Consent to Magistrate Judge Jurisdiction

   In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.**  Date you are mailing (or handing to a correctional officer) this Petition to this court:

8-28-08

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_8 - 28 - 08_____        _/oinhu_____

(DATE)                          SIGNATURE OF PETITIONER

CIV 68 (Rev. Jan. 2006)                    -12-                                        cv

COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,) | No. D047552 |
| ) | |
| Plaintiff and Respondent, ) | San Diego Superior |
| ) | Court No. SCD184449 |
| v. ) | |
| ) | |
| NUH NHYIC LOI, ) | |
| ) | |
| Defendant and Appellant.    ) | |

APPEAL FROM JUDGMENT OF THE
SUPERIOR COURT OF SAN DIEGO COUNTY

Hon. Charles Jones, Judge

_____

APPELLANT'S OPENING BRIEF

_____

PATRICK MORGAN FORD,
Attorney at Law
1901 First Avenue, Suite 400
San Diego, CA 92101

(State Bar No. 114398)
619 236-0679

By appointment of the Court of Appeal
under Appellate Defenders, Inc.
independent case system

# TOPICAL INDEX

TABLE OF AUTHORITIES.........................................................................iii

Statement of the Case.................................................................2

Argument.........................................................................11

I     The prosecution failed to meet the requirements of Penal Code section 784.7, in order to try appellant in San Diego County for an alleged sexual offense which occurred in Ventura County...............11

II    Penal Code section 784.7 is unconstitutional as it violates appellant's Sixth Amendment right to a trial held within the venue where the alleged offense occurred.................................................15

III   The retroactive application of Penal Code section 784.7 violated appellant's constitutional rights to due process of law and the prohibition against ex post facto laws.................................20

IV    The charge in count three, forcible oral copulation against Diane C., was time-barred and cannot be resurrected by subsequent legislation 23

V.    There was insufficient evidence to support the charge of attempted forced oral copulation against Audrey C.................................25

Conclusion.................................................................29

Certificate of Compliance.................................................30

# TABLE OF AUTHORITIES

*Cases*

*Cooks v. Spalding*
    (9th Cir. 1981) 660 F.2d 738 ........................................................................21

*Duncan v. Louisiana*
    (1968) 391 U.S. 145 ........................................................................15

*Fetterly v. Paskett*
    (9th Cir. 1993) 997 F.2d 1295 ........................................................................21

*Holdrige v. United States*
    (8th Cir. 1960) 282 F.2d 302 ........................................................................15

*Jackson v. Virginia*
    (1979) 443 U.S. 307 ........................................................................25

*Stogner v. California*
    (2003) 539 U.S. 607 ........................................................................22

*United States v. Dijames*
    (11 Cir. 1984) 731 F.2d 758 ........................................................................15

*United States v. Hinton*
    (E.D. La. 1967) 268 F.Supp. 728 ........................................................................15

*United States v. Partin*
    (E.D. Cal. 1970) 320 F.2d 275 ........................................................................15

*Williams v. Florida*
    (1970) 399 U.S. 78 ........................................................................15

*Abelleira v. District Court of Appeal*
    (1941) 17 Cal. 2d 280 ........................................................................13

*Auto Equity Sales, Inc. v. Superior Court*
    (1962) 57 Cal.2d 450 ........................................................................18

*Barnes v. Superior Court*
    (2002) 96 Cal.App.4th 631 ................................................................19

*Hernandez v. Municipal Court*
    (1989) 49 Cal.3d 713 ....................................................................15

*O'Hare v. Superior Court*
    (1987) 43 Cal.3d 86 .....................................................................15

*People v. Avery*
    (2002) 27 Cal.4th 49 ....................................................................12

*People v. Betts*
    (2005) 34 Cal.4th 1039 ............................................................12,13

*People v. Coddington*
    (2000) 23 Cal.4th 529 ..................................................................15

*People v. Danielson*
    (1992) 3 Cal.4th 691 ....................................................................15

*People v. DiSimone*
    (1998) 6 Cal.App.4th 693 .............................................................20

*People v. Dixon*
    (1995) 75 Cal.App.4th 935 ...........................................................27

*People v. Elam*
    (2001) 91 Cal.App.4th 298 ...........................................................26

*People v. Espinoza*
    (2002) 95 Cal.App.4th 1287 .........................................................26

*People v. Guzman*

    (1988) 45 Cal.3d 915 ....................................................................15

*People v. Guzman*
    (2003) 113 Cal.App.4th 538 .........................................................12

*People v. Hill*
(1992) 3 Cal.4th 959 ....................................................................15

*People v. Johnson*
(1980) 26 Cal.3d 557 ...................................................................25

*People v. Jones*
(1973) 9 Cal.3d 546 .....................................................................16

*People v. Pompa-Ortiz*
(1980) 27 Cal.3d 519 ...................................................................13

*People v. Reilly*
(1970) 3 Cal.3d 421 .....................................................................26

*People v. Senior*
(1992) 3 Cal.App.4th 765 ............................................................26

*People v. Superior Court (Manuel G.)*
(2002) 104 Cal.App.4th 915 ........................................................19

*Price v. Superior Court*
(2001) 25 Cal.4th 1046 ......................................................16,17,20

*Roman Catholic Bishop of Oakland v. Superior Court*
(2005) 128 Cal.App.4th 1155 ......................................................20

Statutes

Penal Code section
667.61(e)(5) ................................................................................21
691(b) .........................................................................................13
777 ..............................................................................................13
784.7 ...................................................................................10,12,16
954 ..............................................................................................11

United States Constitution
Sixth Amendment .................................................................16,18
Fourteenth Amendment .............................................................16
Article I, section 10, clause 1 ....................................................19

California Constitution
      Article I, sections 7 and 15 ............................................................................ 19


**Other Authorities**
      1 La Fave, Criminal Procedure (2d ed.1999) ................................................. 16
      CALJIC No. 6.00 ............................................................................................ 26

COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, )<br>)<br>Plaintiff and Respondent, )<br>)<br>v. )<br>)<br>NUH NHYIC LOI, )<br>)<br>Defendant and Appellant. ) | No. D047552<br><br>San Diego Superior<br>Court No. SCD184449 |

APPEAL FROM JUDGMENT OF THE
SUPERIOR COURT OF SAN DIEGO COUNTY

Hon. Charles Jones, Judge

_____

APPELLANT'S OPENING BRIEF

_____

**Introduction**

Appellant was convicted by a jury of several sexual assault charges as the result of incidents involving three women. He was sentenced to 40 years-to-life under the one strike law. He presently challenges the application and constitutionality of Penal Code section 784.7, which permits a trial to be held outside the county where the alleged incident occurred. He also alleges that the statute of limitations had run as to one incident and there was insufficient evidence to support the conviction for another count.

**Statement of the Case**

1

Appellant was convicted of sexual battery by restraint (Penal Code section 243.4(a) with an allegation under Penal Code section 12022(b)(1), attempted forcible oral copulation (Penal Code sections 288a(c) and 664), forcible oral copulation (Penal Code section 288a(c), with allegations under Penal Code sections 12022.3(a), 667.61(a)(c)(d), 667.61 (a)(c)(e), and three allegations under 667.61 (b)(c)(3), kidnapping for forced oral copulation (Penal Code section 209(b)(1), with an allegation under Penal Code section 12022(b)(1), robbery (Penal Code section 211), with an allegation under Penal Code section 12022(B)(1), and making a criminal threat (Penal Code section 422) with an allegation under Penal Code section 12022(b)(1).) The court sentenced appellant to 40 years-to-life under the one strike law, and stayed a total of nine determinate years. (CT 129.)

Appellant filed a timely notice of appeal. (CT 133.)

### Statement of the Facts

*Prosecution's case*

*The Diane C. incident (Count Three)*

In 1997, Diane C. worked as a hostess at the Peking Inn restaurant in Camarillo, California. (RT 18.) Diane was 41 years-old at the time. (RT 28.) Appellant waited tables at the restaurant. (RT 18.) In March of 1997, appellant offered to give Diane a ride home, placing her bicycle in the trunk of his car. (RT 19.) Diane and appellant had only a working relationship and this was the first time he had offered her a ride home after work. (RT 19.) Her house was approximately two miles from the restaurant. (RT 20.)

When they left that afternoon, appellant drove his car around to the side of the

2

restaurant, parking with the passenger side door so close to the wall as to prevent it from opening. (RT 20.) Diane became fearful that "something was wrong." (RT 21.) She asked appellant to drive her home. (RT 21.) Instead, he pulled his pants down and began to force her head down toward his crotch. (RT 21.) When she asked appellant what he was doing, he replied, "You know what I'm doing. This is what you want." (RT 22.) She told him, "I don't. This isn't." (RT 22.) Appellant laughed. (RT 22.)

Appellant rubbed his penis with his hand and grabbed Diane by the head. (RT 23.) Appellant was erect by the time he pushed her head into his lap and her mouth onto his penis. (RT (RT 24.) He ejaculated after two or three minutes. (RT 24.) He then masturbated again for a few minutes. (RT 26.) He pulled up his pants, zipped them and drove to another area of the parking lot. (RT 26.) He stopped the car and told her she could go home; he would get her bike from the trunk. (RT 26.)

"For some [unknown] reason," she said she then "took control of this terrible scene" and insisted that appellant drive her home. (RT 27.) At first he said, "I don't really want to drive you home," but then relented. (RT 27.)

The drive to her house took about five minutes. (RT 28.) Her elderly parents with whom she lived were both home. (RT 28.) Appellant removed the bike from his trunk and wheeled it into the open garage. (RT 28.) Her father was in the garage. (RT 28.) Diane decided not to tell her parents what had happened as they were both elderly and her father was in poor health. (RT 29.) While she went inside the house, appellant engaged her father in conversation. (RT 29.) She never saw appellant again. (RT 31.)

She did not report the matter to police, but did describe the incident to the

3

restaurant manager, Robert Wong. (RT 30.)

Several years later, in 2003, she telephoned the Ventura County Sheriff's Department and reported the incident to authorities. (RT 31.)  A uniformed deputy came to her house and took a full report.  (RT 32.)  She was later interviewed by a detective.  (RT 34.)  In early 2004, she was interviewed by an investigator from the San Diego County District Attorney's.  (RT 34.)

*The Hitomi N. incident (Counts One, Four, Five, Six and Seven)*

In early 2003, Hitomi N., a Japanese citizen, was attending medical school at the University of California at San Diego.  (RT 60.)  One day in late March or early April, 2003, Hitomi was studying for her final exams in the biomedical library.  (RT 60.)  She had parked her car in a large student parking lot behind the library.  (RT 60.)  At approximately 4:00 or 5:00 p.m. she was walking to her car when a man grabbed her from behind, turned her around to face him and displayed a knife.  (RT 60.)

She had not previously seen the man who grabbed her, yet he told her, "You're Hitomi N.----. I know where you live," and then recited her address in Mira Mesa.  (RT 66.)  He said, "If you scream or resist, I could come after you."  (RT 66.)  He told her he also knew who her boyfriend was and where he lived.  (RT 66.)  He told her he could also go after her boyfriend.  (RT 66.)

The man locked his right arm inside her left arm and walked her to his car.  (RT 68.)  The man's car, a silver Mazda Miata, was parked, she believed, 50 to 100 hundred feet from where he first approached her.  (RT 69, 73.)  (Police later measured the distance and determined it to be approximately 75 feet.)  (RT 285.)  The man opened the passenger

4

door, forced her inside and locked the door with a key. (RT 69.) He walked around the car and entered on the driver's side. (RT 69.) Once inside the car, the man told her, "Let me touch your tits." (RT 73.) She was wearing a white jacket which the man unzipped down the front and placed his hand on her breast. (RT 76.) After a few minutes, the man said, "Let me touch your pussy." (RT 77.) She could not recall whether he unbuttoned her pants and pulled them down to her knees, or whether she did so at his direction. (RT 77, 78.)

The man then told her, "Your ass next." (RT 80.) He rubbed her buttocks and touched her anus without penetrating it, but in "in a rough way." (RT 80-82.) The man removed his pants or pulled them down and told her, "Give me head." (RT 85.) The man was not erect when she first started performing oral sex. (RT 86.) He used his hand to push and pull her head up and down. (RT 87.) After about 20 minutes, the man ejaculated in her mouth, telling her to "drink it." (RT 88.) He pushed her to the passenger side of the car. (RT 88.) He then pulled up his pants and told her, "Give me your money. Give me your wallet." (RT 89.) She took the wallet from her handbag and handed it to the man. (RT 89.) He removed approximately $300 in cash and then returned the wallet. (RT 89.) He then told her not to forget that he knew everything about her and her boyfriend. (RT 90.) He told her, "If you go to the police, you know what's going to happen. Go." (RT 90.)

He unlocked the passenger door, and she got out and ran toward her car. (RT 90.) She entered her car and sat there for a few minutes, "in shock." (RT 92.) She then drove to her house, washed her hands and rinsed her mouth out several times. (RT 92.) She

5

bathed a couple of times, then laid on her bed, crying. (RT 94.) She did not tell anyone of the incident until about six months later; she believes it was December, 2004, when she finally described the incident to her boyfriend. She brought it up during an argument after he said she had become distant and unaffectionate. (RT 94.)

Ten days after the attack, she noticed someone had written Chinese characters in the dirt on the windshield of her boyfriend's car. (RT 95.) The characters, symbolizing wind and water, are associated with fortune tellers. (RT 98.) She had previously received telephone calls from a man who claimed to be from the International Center at UCSD and asked her for personal information which he said he needed to process papers to remain a student at UCSD. (RT 100.)

When she told her boyfriend of the attack, he persuaded her to report it to the UCSD police, which she did in December of 2004. (RT104.) Eventually, she was shown a photographic line-up of six men. (RT 106.) She selected appellant's photograph at that time, and later positively identified appellant in court. (RT 106-107.)

### The Audrey C. Incident (Count Two)

In March, 2003, Audrey C. was a medical student at UCSD. (RT 247.) One afternoon she was wearing her green "scrubs" from a work assignment, and relaxing in her car in the parking lot of the Mission Bay Park Visitor's Center. (RT 248.) A man in a car parked next to her began a conversation. (RT 248.) He asked her about the custom wheels on her car. (RT 248.) He then engaged her in what turned out to be lengthy conversation in which he claimed he was gay, had just broken up with his boyfriend, and moved to San Diego. (RT 249.) He told her his name was "Jason," which is the name appellant

6

commonly used. (RT 28, 249.) He told her he had a "straight" friend that he would like to introduce her to, and believed they would make a nice match. (RT 250.) They exchanged cell phone numbers. (RT 252.)

"Jason" telephoned her the next evening and told her he had some flowers that his friend had sent her. (RT 253.) She gave him her address. (RT 253.) He arrived at her apartment a short time later and gave her an excuse about not having the flowers, and instead brought bottles of wine, a handbag and a necklace. (RT 254.) He made a comment about her having a "cute" body and how he wanted to be her "big brother" so that he could watch out for her. (RT 257.)

She had previously mentioned recent nightmares about being involved in a car crash. (RT 258.) Jason told her he had powers which allowed him to see into the future, and he would try to use them to see what was in store for her. (RT 258.) Without asking, he picked up some candles she had in her living room and took them into her bedroom. (RT 260.) He lit the candles and convinced her to sit across from him on the floor. (RT 260.) He said he felt a special power controlling him and he wanted her to write some things down. (RT 260.) He told her that her ex-boyfriend's name was Jason. (RT 260.) She became very curious as she had never mentioned this fact to him. (RT 260.) He said her boyfriend had placed a curse on her and she would be involved in a car crash in April. (RT 261.) When she became frightened, he told her not to worry, and that he would look after her. (RT 261.)

Jason told her that meeting him was "meant to be," as he could channel her ex-boyfriend into his own body. (RT 262.) He said that he needed to "get inside" her as this

7

would cleanse her. (RT 262.) He said that he "needed to get down on" her. (RT 262.) He

then reached over and tried to unzip her pants. (RT 262.) She pushed him away and told

him that he needed to leave her apartment. (RT 262.) He insisted that she needed to do

this with him, but she was adamant that he should leave. (RT 263.) He became agitated

after a second attempt to unzip her pants. (RT 265.) Realizing that she was not going to

cooperate, he became angry and began to leave. (RT 265.) As he neared the front door, he

said, "You bitch. You're just like all the other bitches." (RT 265.) Once outside the

apartment, he remained for about 30 seconds before leaving. (RT 265.) As he walked

away, he told her, "This is not the last time you'll hear of me." (RT 274.)

Once the man left, Audrey telephoned police and reported the incident. (RT 260.)

The police later confiscated the bottles of wine, handbag and necklace Jason had brought.

(RT 266.) The information she gave to police included Jason's cell phone number and the

license number of his car. (RT 267.) She admitted in court that Jason never threatened her

with harm, struck her, or committed any violent or forceful act. (RT 274-275.)

*Defense case*

Nancy Chui, the owner of the Peking Inn, was unable to locate any records

pinpointing the dates that Diane C. and appellant worked at the restaurant. (RT 236.) She

said that Diane quit in 1997 and moved to Ventura to live with her boyfriend. (RT 237.)

Ms. Chui was not aware of any problems between appellant and Diane. (RT 238.)

Appellant also left on his own accord in 1997; she did not fire him. (RT 237.)

Regarding the second incident, appellant's wife testified extensively about the cell

phone records reflecting calls made between Hitomi and appellant's phones. (RT 207-227,

8

313.) The defense argued the acts with Hitomi were consensual and that she only claimed

otherwise during a fight with her boyfriend.

The defense argued that the incident involving Audrey was not a criminal offense,

but rather a common situation where a woman rejected the advances of a man, who then

left her apartment.

//

## Argument

### I

**The prosecution failed to meet the requirements of Penal Code
section 784.7, in order to try appellant in San Diego County for
an alleged sexual offense which occurred in Ventura County.**

### *Background*

Count three of the information charged that in March, 2001, appellant forced Diane

C. to perform oral copulation upon him. (CT 2.) It was further alleged that this count, and

the counts involving Hitomi and Audrey were "properly joinable with such offenses,

occurred in more than one county, and the offense alleged in at least one of such counts

occurred within San Diego County, within the meaning of Penal Code section 784.7(a)."

(CT 2.)

Trial testimony revealed that the alleged assault of Diane C. occurred in a parking

lot in Camarillo, which is in Ventura County. (RT 18.) Appellant was charged with this

crime, tried by a jury and convicted in the San Diego County Superior Court.

The prosecution failed to move for the required hearing under Penal Code section

954, and offered no written proof that the district attorneys in both counties had consented

9

to the trial of the Ventura County offense in San Diego.

*Applicable Law*

Penal Code section 784.7 holds:

(a) When more than one violation of Section 220, except assault with
intent to commit mayhem, 261, 262, 264.1, 269, 286, 288, 288a, 288.5,
or 289 occurs in more than one jurisdictional territory, the jurisdiction
of any of those offenses, and for any offenses properly joinable with that
offense, is in any jurisdiction where at least one of the offenses occurred,
subject to a hearing, pursuant to Section 954, within the jurisdiction of the
proposed trial. At the Section 954 hearing, the prosecution shall present
evidence in writing that all district attorneys in counties with jurisdiction
of the offenses agree to the venue. Charged offenses from jurisdictions
where there is no written agreement from the district attorney shall be
returned to that jurisdiction.

(b) When more than one violation of Section 273a, 273.5, or 646.9 occurs
in more than one jurisdictional territory, and the defendant and the victim
are the same for all of the offenses, the jurisdiction of any of those offenses and for
any offenses properly joinable with that offense, is in any jurisdiction where at least
one of the offenses occurred.

Penal Code section 954 states:

An accusatory pleading may charge two or more different offenses
connected together in their commission, or different statements of the
same offense or two or more different offenses of the same class of
crimes or offenses, under separate counts, and if two or more accusatory
pleadings are filed in such cases in the same court, the court may order
them to be consolidated. The prosecution is not required to elect between
the different offenses or counts set forth in the accusatory pleading, but the
defendant may be convicted of any number of the offenses charged, and
each offense of which the defendant is convicted must be stated in the
verdict or the finding of the court; provided, that the court in which a case
is triable, in the interests of justice and for good cause shown, may in its
discretion order that the different offenses or counts set forth in the
accusatory pleading be tried separately or divided into two or more
groups and each of said groups tried separately. An acquittal of one or
more counts shall not be deemed an acquittal of any other count.

*Legal Analysis*

10

Penal Code section 784.7 creates a venue for trial of some offenses in a county other than the one in which the offenses occurred.  However, to invoke section 784.7, the court must conduct a hearing under Penal Code section 954, where the prosecutor is required to produce written proof that the district attorneys of each county consent to the trial being held in the county where the charges have been brought.

The prosecution noted the alleged applicability of Penal Code section 784.7 in the information (CT 3), yet failed  to move for the required hearing or to offer any proof, written or otherwise, of the required consent by the district attorneys. The statute is somewhat ambiguous as to whether the prosecution or the defense must move for such a hearing, or whether the court must hold such a hearing *sua sponte*.  However, as the party seeking joinder, the statute must be read to place that burden upon the prosecution.  The California Supreme Court has held that it is the burden of the prosecution to prove jurisdiction to try a case, by a preponderance of the evidence.  (*People v. Betts* (2005) 34 Cal.4th 1039, 1053.)  Appellant's interpretation of this statute is also required under the rule of lenity where, absent any further guidance from the legislature,  such ambiguity must be resolved in favor of the defendant. (*People v. Avery* (2002) 27 Cal.4th 49, 58; *People v. Guzman* (2003) 113 Cal.App.4th 538.)  The prosecution failed to meet its statutory burden to qualify this count for trial in San Diego.

Penal Code section 784.7(a)  holds that, "Charged offenses from jurisdictions where there is no written agreement from the district attorney shall be returned to that jurisdiction."  The trial of count three, occurring in Ventura County, was nevertheless conducted in San Diego.

11

Having failed to meet the requirements of Penal Code section 784.7, the court lacked authorization to conduct a trial outside of its statutory and constitutional venue. (Penal Code sections 691(b), 777.)[1] Count three must be reversed and returned to the trial court for a proper hearing under Penal Code sections 784.7 and 954, in order to determine whether the San Diego County Superior Court has jurisdiction to try the charge. (*People v. Betts, supra,* 34 Cal.4th 1039, 1050.)

Appellant was improperly denied his statutory right to a trial held in the county where the charge allegedly occurred. In that the error is jurisdictional in nature, no actual prejudice need be shown. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280,

---

[1] Penal Code section 691(b) states that, "the words 'territorial jurisdiction,' when used with reference to a court, means the city and county, county, city, township, or other limited territory over which the criminal jurisdiction of the court extends, as provided by law, and in the case of a superior court mean the county in which the court sits."

Penal Code section 777 holds: "Every person is liable to punishment by the laws of this State, for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States; and except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."

288; *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529.)

## II

### Penal Code section 784.7 is unconstitutional as it violates appellant's Sixth Amendment right to a trial held within the venue where the alleged offense occurred.

#### *Background*

The alleged forcible oral copulation against Diane C. occurred in Ventura County. Without appellant's waiver, consent or agreement, the count was joined with offenses occurring in San Diego County and a joint trial held there before a jury drawn from the county, which resulted in appellant's conviction.

#### *Applicable Law*

The Sixth Amendment to the Constitution holds:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law,* and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

(Emphasis added.)

The federal courts have repeatedly acknowledged the importance of the "vicinage aspect" of the Sixth Amendment. (See, e.g., *Holdrige v. United States* (8th Cir. 1960) 282 F.2d 302 [correct venue in criminal cases is a matter of constitutional right and questions

of venue are not merely a question of formal legal procedure, but rather deep issues of

public policy]; *United States v. Partin* (E.D. Cal. 1970) 320 F.Supp. 275 [venue in

criminal cases involves more than legal niceties, and is a matter of constitutional import];

*United States v. Hinton* (E.D. La 1967) 268 F.Supp. 728 [purpose of the venue clause of

the Sixth Amendment is to secure a fair trial to a defendant]; *United States v. Dijames* (11th

Cir. 1984) 731 F.2d 758 [in order that defendants can be tried before a well-informed jury,

the Sixth Amendment directs that a trial be held before those drawn from the local

community surrounding the charged criminal acts].)

## Legal Analysis

While not specified in the language of the amendment itself, most courts previously

agreed, or assumed, that the "vicinage right" is among those incorporated through the

Fourteenth Amendment to be applicable to the states and that, as a result, a defendant had

a right to be tried in the county or district where the offense was committed. (See *Williams*

*v. Florida* (1970) 399 U.S. 78, 86; *Duncan v. Louisiana* (1968) 391 U.S. 145, 149.) The

California Supreme Court made this assumption in a long, unbroken line of cases.

(*Hernandez v. Municipal Court* (1989) 49 Cal.3d 713, 722; *O'Hare v. Superior Court*

(1987) 43 Cal.3d 86, 94-95; *People v. Guzman* (1988) 45 Cal.3d 915, 938; *People v.*

*Danielson* (1992) 3 Cal.4th 691, 704; *People v. Hill* (1992) 3 Cal.4th 959, 984-985; *People*

*v. Coddington* (2000) 23 Cal.4th 529, 573; and, *People v. Jones* (1973) 9 Cal.3d 546.)

However, in *Price v. Superior Court* (2001) 25 Cal.4th 1046, the court abandoned

this line of reasoning, reconsidered its previous holdings that vicinage was an essential

aspect of the Sixth Amendment right to jury trial, and concluded that the venue clause of

**14**

the Sixth Amendment was not made applicable to the states via the Fourteenth

Amendment. (*Id.* at p. 1057-1069.) Accordingly, the court abruptly reversed course and

found the 1998 version of Penal Code section 784.7 did not violate the Sixth Amendment.

The court recognized that "courts of other jurisdictions are divided on the incorporation

question (see 1 LaFave *et al.*, Criminal Procedure (2d ed. 1999) §2.6(b), p.568, and cases

cited)." (*Id.* at p. 1057.) The court observed that the United States Supreme Court has

never *expressly held* that the venue aspect of the Sixth Amendment is either a

fundamental part of the Bill of Rights which is directly applicable to the states, or is

incorporated within the Fourteenth Amendment.

The reasoning of *Price* is hopelessly flawed. While it contains a lengthy re-

examination of the history of the vicinage aspect of the Sixth Amendment — one worthy

of a law review article — the decision is little more than a re-writing of the history of

jurisprudence supporting a widely-held constitutional principle. The long line of its own

authorities which it overruled, and the absence of a United States Supreme Court holding

supporting its new position, undermine the court's conclusion that it was merely

"correcti[ng] court-created error." (*Id.* at p.1058, fn. 8.)

One important distinction for the present analysis is that the *Price* court was

reviewing the constitutionality of the 1998 version of section 784.7. The original language

of that statute stated:

> When more than one violation of section 261, 262, 264.1, 273a,
> 273.5, 286, 288, 288.5, 289, or 646.9 occurs in more than one
> jurisdictional territory, and the defendant and the victim are the same
> for all the offenses, the jurisdiction of any of those offenses is any
> jurisdiction where at least one of the offenses occurred.

15

(Former Penal Code section 784.7, added by Stats. 1998, c. 302 (A.B 2734).)

The *Price* court observed that,

> Section 784.7 was enacted to protect repeat victims of child abuse or molestation and victims of domestic violence, offenses that are often inflicted on the same victim by the same perpetrator, from the need to make multiple court appearances to testify against the perpetrator and to reduce costs of separate trials.

(*Price v. Superior Court, supra,* 25 Cal.4th 10461055.)

The court therefore impliedly found the compelling public interest in protecting these victims from having to testify in two or more courts justified restricting a defendant's right to be tried within the county where the alleged offense occurred.

However, in 2002, the statute was rewritten as set forth above. (Stats. 2002, c. 194 (A.B 2252), §2.) The revised section eliminated the requirement that both the victim and the defendant be the same in all of the offenses, if a hearing was conducted under Penal Code section 954. Thus, the main goal of the former statute, protecting specified crime victims from having to testify in multiple trials, has been eliminated. In this case, Diane C. would not have otherwise been required to testify in two or more trials, but, rather, in a single trial held within the county where the offense occurred.

While this court will likely emphasize that it is bound by the *Price* decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450), appellant argues the issue presently in order to distinguish his situation based upon the revised statute, from that considered in *Price*, and to exhaust his lower court remedies in anticipation of future litigation on this question. The revised statute has yet to be subjected to constitutional

16

review by the State Supreme Court, and the vicinage clause of the Sixth Amendment, as placed in issue here, has never been addressed by the United States Supreme Court.

The unauthorized venue change deprived appellant of his right to be charged and tried in the county where the offense allegedly occurred. As a jurisdictional error, no actual prejudice need be demonstrated. (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d 280, 288; *People v. Pompa-Ortiz,* 27 Cal.3d 519, 529.) The judgment is without legal effect.

### III

**The retroactive application of Penal Code section 784.7 violated appellant's constitutional rights to due process of law and the prohibition against ex post facto laws.**

*Background*

The charge contained in count three, alleging that appellant forced Diane C. to orally copulate him in Ventura County, occurred in March, 1997. (CT 2.) The original version of Penal Code section 784.7, which, given the circumstances of this case, would not authorize a trial of the Ventura County charge in another venue, was not enacted until 1998. (Stats. 1998, c. 302 (A.B 2734).) The revised statute, under which the prosecution claimed authorization to try the Ventura County charge in San Diego, was enacted in 2002. (Stats. 2002, c. 194 (A.B 2252), §2.) Appellant's trial commenced on April 6, 2005. (CT 148.)

*Applicable Law*

A criminal defendant is entitled to due process of law. (United States Constitution, Fourteenth Amendment; and see, California Constitution, article I, sections 7 and 15.) The

17

basic purpose of due process guarantees is to prevent the government from subjecting its citizens to arbitrary or unfair acts. (See, *Barnes v. Superior Court* (2002) 96 Cal.App.4th 631, 640 fn. 7; and, *In re Rogers S.* (1977) 19 Cal.3d 921, 927.)

Both the state and federal constitutions prohibit *ex post facto* laws. (United States Constitution, article 1, section 10, clause 1; California Constitution, article 1, section 9.) The California provision is interpreted in the same manner as its federal counterpart. (*People v. Superior Court (Manuel G.)* (2002) 104 Cal.App.4th 915, 926.)

A law violates the *ex post facto* prohibition if it (1) makes illegal previous conduct which was not criminal at the time of its commission; or, (2) retroactively increases the punishment for a previously committed crime; or, (3) alters the rules of evidence so as to make it easier for the state to convict a person than it was at the time of the crime's commission. (*Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1160; *Collins v. Youngblood* (1990) 497 U.S. 37, 41-43.)

*Legal Analysis*

When the March, 1997, sexual assault of Diane C. occurred, there was no statute authorizing the state to deprive appellant of his then-existing right to have his Ventura County charge tried in that county. The retroactive application of the 2002 version of Penal Code section 784.7 violated appellant's right to due process of law, in that it arbitrarily deprived him of a substantial right, recognized by the State Supreme Court until its 2001 decision in *Price v. Superior Court*.

Moreover, application of Penal Code section 784.7 in this case violated the prohibition against *ex post facto* laws, in that it permitted the increase of punishment to

18

which appellant was subjected, over and above his criminal liability at the time of the crime. As noted, in 1997 there was no statute which would have permitted joinder of the 1997 Ventura County count with the 2003 San Diego County counts. By joining these counts in a single trial utilizing the 2002 version of Penal Code section 784.7, the prosecutor was able to invoke the "multiple victims" provision of the one strike law (Penal Code section 667.61(e)(5)) in order to impose a sentence of 25 years-to-life. Without such a multiple victim finding "in the present case," this enhancement could not have been imposed. (See *People v. DiSimone* (1998) 6 Cal.App.4th 693, 696 [citing language of Penal Code section 667.61 (e)(5)].) Without the one strike provision, a violation of Penal Code section 288a(c)(2), oral copulation by force or threats, subjects a defendant to a prison term of three, six or eight years. Thus, the retrospective application of Penal Code section 784.7 permitted a drastic increase in appellant's punishment, which is prohibited by the *ex post facto* clause of both the state and federal constitutions.

Finally, by arbitrarily depriving appellant of a state-created liberty interest, i.e., his right to be tried in the county where the charge occurred, the court further deprived appellant of due process of law. (See, *Hicks v. Oklahoma* (1980) 447 U.S. 447 U.S. 343; *Fetterly v. Paskett* (9th Cir. 1993) 997 F.2d 1295, 1299; and, *Cooks v. Spalding* (9th Cir. 1981) 660 F.2d 738, 739.)

The error here violated both the California and United States Constitutions. The resulting increase in appellant's sentence demonstrates that he suffered substantial prejudice by this error.

**IV**

19

**The charge in count three, forcible oral copulation against
Diane C., was time-barred and cannot be resurrected by
subsequent legislation.**

*Background*

The alleged sexual assault of Diane C. occurred in early March, 1997.  (RT 18.)

The information charging appellant with this crime was filed on October 8th, 2004. (CT 1.)

*Applicable Law*

A violation of Penal Code section 288a carries a maximum sentence of eight years.

In California, a prosecution for any crime punishable by a maximum sentence of eight

years or more, must be commenced within six years of the crime's commission.  (Penal

Code section 800.)

Penal Code section 801.1 was added by the passage of AB 1667, filed with the

Secretary of State on August 30, 2004. That statute provides that, notwithstanding any

other provision of law,  a violation of any crime listed in Penal Code section 290 (which

includes Penal Code section 288a), shall be commenced within 10 years of the commission

of the offense.

*Legal Analysis*

Under Penal Code section 800, prosecution for the alleged violation of Penal Code

section 288a against Diane C., must have been commenced within six years of the offense.

As noted above, that crime occurred in early March, 1997.  Accordingly, the charge

became time-barred in early March, 2003.

When defense counsel raised this argument at the preliminary examination, the

prosecutor cited to then newly enacted Penal Code section 801.1, claiming that, under that

20

provision, the time limitation for this count had been increased to 10 years, and therefore would not become time-barred until 2007. (PH RT 80.)

The prosecutor's argument is negated by the United States Supreme Court's holding in *Stogner v. California* (2003) 539 U.S. 607. The *Stogner* decision holds that legislation purporting to resurrect an offense which had already become time-barred at the time of the law's enactment, would violate *ex post facto* principles. (*Id.* at p. 614.)

In that the Ventura County charge of Penal Code section 288a as to Diane C. became time-barred under Penal Code section 800 in early March, 2003, it cannot be resurrected by legislation passed in August, 2004, extending the statute of limitations for this charge until March, 2007.

The conviction set forth in count three of the information must be reversed and the charge dismissed with prejudice as being permanently time-barred under California law and United States Supreme Court case authority.

## V.

### There was insufficient evidence to support the charge of attempted forced oral copulation against Audrey C.

#### *Background*

Audrey C. testified that, after meeting appellant in a parking lot and exchanging cell phone numbers, appellant telephoned her the next evening and asked to visit her apartment. (RT 253.) Audrey gave appellant the address and he arrived sometime afterwards. (RT 254.)

Once inside her apartment, he offered to tell her fortune, went into her bedroom, sat

21

on the floor and lit some candles. (RT 259.) Audrey joined appellant sitting on the floor. (RT 260.) Appellant then claimed that in order to expel a curse that had been placed on Audrey by her ex-boyfriend, he needed to "get inside" of her, to "go down on her." (RT 262.) When he attempted to unzip her pants, she pushed his hand away and told him to leave. (RT 262.) He again tried to unzip her pants, and again she pushed his hand away and demanded that he leave. (RT 263.) Realizing that Audrey was not going to agree to his request for sex, appellant became angry and left her apartment. (RT 265.)

During cross-examination, defense counsel asked Audrey, in detail, whether appellant had ever threatened her, or committed any act of force or violence against her:

A. I felt threatened, but he didn't exactly say anything to specifically say

that he was going to hurt me. But he was getting very agitated, and I felt

like if I didn't do what he wanted me to do, he was going to force

something on me.

Q. Well, you didn't do what he wanted you to do, did you?

A. Right. But I had – but it took me three or four times to get him out.  I

mean, he was trying, and he got aggressive, more aggressive each time, I

felt.

Q. Okay.  When I say threatened, do you know what I'm saying?

A. Yeah. No, he didn't specifically threaten me.

Q. Okay. Did he ever strike you?

A. No.

Q. Did he ever grab you or in any way use violence against you?

A. No. Well, not grab me, that kind of — I mean, that was violent for me,

anybody reaching over trying to pull down your pants.

Q. Did he ever say to you anything like this, "If you don't allow me to

perform oral copulation on you, I'm going to beat you up"?

A. No.

Q. Did he ever say to you that, "If you don't allow me to have sexual

intercourse with you, I'm going to beat you up"?

A. No.

Q. And, if fact, when you told him, no, maybe it was three or four times, he

left your apartment?

A. Yes.

(RT 275-276.)

*Applicable Law*

When a criminal defendant claims that there is insufficient evidence to sustain a

conviction, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S.

307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)

> The test on appeal is whether substantial evidence supports the
> conclusion of the trier of fact, not the whether the evidence proves guilt
> beyond a reasonable doubt. [Citation omitted.] The appellate court must
> determine whether a reasonable trier of fact could have found the
> prosecution sustained its burden of proving the defendant guilty beyond
> a reasonable doubt.

23

(*People v. Reilly* (1970) 3 Cal.3d 421, 425, quoted in *People v. Johnson, supra,* 26 Cal.3d 557, 576.)

"Evidence," to be "substantial" must be "of ponderable legal significance . . . reasonable in nature, credible, and of solid value." (*Ibid.*)

A violation of Penal Code section 288a occurs when, "Any person commits an act of oral copulation . . . accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . ." An attempt to commit such an act is accomplished when the defendant attempts to employ force, duress, etc., to effect the act. (CALJIC No. 6.00; Penal Code section 664.)

### Legal Analysis

"Force," as used in this statute means physical force substantially different or in excess of that required for the act itself. (*People v. Senior* (1992) 3 Cal.App.4th 765, 773, appeal after remand for re-sentencing (1995) 33 Cal.App.4th 531. See also, *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1318; and, *People v. Elam* (2001) 91 Cal.App.4th 298, 306.) Since even voluntary oral copulation almost always involves some physical contact other than genital, a modicum of holding and even restraining cannot be regarded as substantially different or excessive within the meaning of section 288a. (*Ibid.*)

The uncontradicted evidence in this case shows that appellant never employed threats, duress, violence or any means of physical contact, other than attempting to unzip Audrey's pants. When she told him no, appellant made a second attempt. When Audrey again demanded that appellant leave her apartment, he did so. There was no force, duress, threat or violence employed by appellant in an ineffectual attempt to commit the crime set

24

forth in section 288a. (See *People v. Dixon* (1999) 75 Cal.App.4th 935, 942.)

In a motion for a new trial, counsel asserted that there was insufficient evidence to sustain this charge. The court, while denying the motion, conceded that the evidence as to this count was "rather meager." (RT 552.)

At sentencing, the court, on its own motion, stayed the sentence as to this count "indefinitely." (RT 658.) It did so because, "That count was troubling to me on evidentiary and whatever [sic]. That case was touch and go when the jury found him guilty." (RT 658.)

While permanently staying the sentence on this count was certainly justified, the court's proper course of action was to have found the evidence was insufficient to sustain the charge — which it impliedly did in its decision to stay the sentence.

This conviction should be reversed and a verdict of not guilty entered.

## Conclusion

Appellant was convicted of count three by way of a trial held in a court which lacked jurisdiction to try the case. The statute on which the court and prosecution relied for this out-of-county trial was misapplied and is further unconstitutional. In any case, the charge was time-barred. There was also insufficient evidence to sustain the charge of attempted forced oral copulation.

The remaining convictions of the offenses regarding Hitomi were likely impacted by the flawed charges involving the other two alleged victims. The evidence in Hitomi's case showed repeated telephone calls between she and appellant, and the rape claim was only made during a fight with her boyfriend. Trying this case with the other alleged sex

offenses involving Diane and Audrey substantially increased the chances that the jury would reject appellant's claim of consent by Hitomi. The entire judgment must be reversed.

Dated:

> Respectfully submitted,
>
> PATRICK MORGAN FORD,
> Attorney for Appellant
> NUH NHYIC LOI

## Certificate of Compliance

I, Patrick Morgan Ford, hereby certify that the within brief consists of 7030 words.

Dated:

> PATRICK MORGAN FORD

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1984, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Nuh Nhuoc Loi**

FILING FEE PAID
Yes ☐ No ☐
IFP MOTION FILED
Yes ☐ No ☐
CONSENT TO U.S.
Court ☐

**Scribner, et al**

FILED
SEP - 3 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY RM    DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Imperial
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Nuh Nhuoc Loi
PO Box 5007
Calipatria, CA 92233
F-02732

ATTORNEYS (IF KNOWN)

**'08 CV 1619 BTM PCL**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of State |
| ☐ 240 Tort to Land | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE    Docket Number

DATE    9/3/2008    SIGNATURE OF ATTORNEY OF RECORD

_R Mull_

CR

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 154677    — TC

## September 04, 2008
## 11:41:21

## Habeas Corpus

Amount.:                    $5.00 CK
Check#.: PC3692

## Total—>  $5.00

FROM: NUH NHUOC LOI
      VS
      SCRIBNER