UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NUH NHUOC LOI,**<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>**LARRY SCRIBNER, Warden,**<br><br>　　　　　　　　　　　Respondent. | CASE NO. 08cv1619 BTM (PCL)<br><br>**REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**INTRODUCTION**

　　Petitioner Nuh Nhuoc Loi ("Petitioner"), a state prisoner, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction following a jury trial in San Diego Superior Court on April 18, 2005. Petitioner presents five issues: 1) whether the prosecution failed to meet the requirements of California Penal code § 784.7 regarding appropriate venue; 2) whether California Penal Code § 784.7 is unconstitutional as applied to Petitioner; 3) whether the retroactive application of California Penal Code § 784.7 violated the prohibition against ex post facto laws; 4) whether a statutory extension of the statute of limitations by California Penal Code § 801.1 is unconstitutional as applied to Petitioner's prosecution; and 5) whether the trial court convicted Petitioner on insufficient evidence as to one of the charges against him. This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(c)(1)(c) for Proposed Findings of Fact and Recommendation for Disposition. For the reasons set forth below, the Court respectfully recommends the petition be **DENIED**.

## II.

## BACKGROUND

**A. Statement of Facts**

Under 28 U.S.C. § 2254(e)(1) (2008), the state court's factual determinations are presumed to be correct unless Petitioner rebuts the presumption by clear and convincing evidence. Petitioner has not alleged that the factual determinations made by the state court in this case are incorrect. Therefore, the following facts of Petitioner's conviction are taken verbatim from the California Court of Appeal's 2007 opinion upon Petitioner's direct appeal of judgment:

> A. Count 3
>
> In 1997 Loi and Dianne C. were coworkers in Ventura County. He offered to drive her home one afternoon. However, instead of driving to her home, he parked the car near a building, with the passenger door so close to the wall that she could not open it, and unzipped his pants. She protested but Loi nevertheless grabbed her head and forced her mouth onto his penis for two or three minutes until he ejaculated. She did not fight him because he was much stronger and she feared he would become more violent.
>
> B. Count 2
>
> In March 2003 Audrey C. met Loi at Mission Bay Park in San Diego County. He approached her, introduced himself as "Jason," and told her he was new to the area. During their conversation, he mentioned he had just broken up with his boyfriend, and claimed he had a "straight" friend he would like to introduce to her because they would be a good match; they exchanged telephone numbers.
>
> Loi telephoned Audrey the next evening and said he had some flowers for her that his friend had sent for her and asked permission to visit her. She gave Loi her address and he arrived a short time later. He was not carrying flowers, but instead brought four bottles of wine as well as a purse and a necklace as gifts for Audrey. He opened a bottle of wine and, while they sat on the couch and drank wine, he commented that he had never had a little sister and wanted to be her big brother and watch out for her. He put his arm around her and commented, "Oh, I knew you had a cute body."
>
> Loi then stated he sensed Audrey was stressed and said he could look into the future and see what was in store for her. He then picked up some candles, took them into the bedroom, lit them and sat on the floor and convinced her to sit across from him. He produced a deck of cards and did "some weird kind of thing where he was saying that there was some power controlling him to write certain things down, and he was scribbling random things on a piece of paper." Audrey was skeptical until he said her former boyfriend's name was Jason. She became curious because she had never mentioned this fact to Loi. Loi then said Jason had put a curse on her, and she would be involved in a major car crash "in the next month or so." Audrey was shaken by that statement. However, Loi told her not to worry, that he was her big brother, would take care of her, and he could channel her ex-boyfriend into his own body. He said "I need to get inside of you to cleanse you out, and I need to get down on you."
>
> They were sitting on the floor facing each other, with their legs folded "Indian style" and their knees almost touching, when Loi leaned toward her and reached with both hands and

started trying to unzip Audrey's pants. She pushed him away, telling him to leave her apartment, and she stood up and backed away from Loi. However, he kept saying "I need to get inside you. I need to get Jason's curse off of you," and appeared to become more agitated. Loi stood, moved toward her, and "more forcibl[y]" put his hands on her pants to try to unzip them, but she backed up and pushed his hands away again and demanded he leave. Loi was agitated at Audrey's rejection, and she perceived he might "force something on me." However, he finally began to move toward the front door, stating, "You bitch. You're just like all the other bitches." Once outside, he remained near the door for another 30 seconds, and Audrey heard him say, "This is not the last you'll hear of me."

Audrey reported the incident immediately and police responded, collected the items Loi had left behind, and obtained Loi's cellular telephone number and license plate from Audrey.

C. Counts 1, 4-7

In March or April of 2003 Hitomi N. was walking to her car in San Diego County when Loi accosted her. He threatened her with a knife and stated, "You're Hitomi N. I know where you live." He told her the exact address of her apartment, and said, "I know where your boyfriend is. I know where he is, where he lives. I know what his name is, I could come after him too." Loi forced her to walk to his car, where he sexually assaulted her. He then forced her head onto his penis and forced her to copulate him until he ejaculated.

Loi then demanded her wallet and, when she complied, he took approximately $300 before throwing the wallet back to her. He then warned her, "You know, don't forget I know everything about you and your boyfriend. So if you go to the police, you know what's going to happen." She eventually reported the incident to police and identified Loi as her attacker in a photographic lineup.

People v. Loi, Court of Appeal, Fourth Appellate District, D047552 (February 28, 2007), filed in the present action as Lodgment 8.

Following a verdict of guilty at the conclusion of Petitioner's jury trial, on October 20, 2005, the trial court sentenced Petitioner to a total term of 40 years to life and four years in prison on Counts three, four, six and seven.[1] (Lodgment 1, 178.)

**B.   State Court Proceedings**

Petitioner appealed the judgment to the California Court of Appeal. (Doc. No. 1 Pet. 2.) Petitioner contended that his conviction should be reversed because (1) the prosecution failed to make the requisite showing to make venue in San Diego proper under § 784.7; (2) section 784.7 is unconstitutional under the Sixth Amendment to the United States Constitution because it permits trial for an offense outside of

---

1. Counts one, two and five of the indictment were stayed at Petitioner's sentencing hearing. (Lodgment 1, 177-78.) Petitioner was sentenced to an indeterminate term of 15 years to life on Count three; 25 years to life consecutive with an enhancement of four years on Count 4; three years concurrent with a one year concurrent enhancement on Count six; and two years concurrent with a one year concurrent enhancement on Count seven. (Id.)

the county where the offense occurred; (3) application of § 784.7 as to Petitioner violates the ex post facto clauses of the state and federal Constitutions; (4) the prosecution on Count 3 was time barred; and (5) the evidence was insufficient to support the conviction for Count 2. (Lodgment 8 at 5, 14.)

On February 28, 2007, the Court of Appeal affirmed the judgment of the Superior Court. (Lodgment 8.)   The Court of Appeal held: (1) the procedural requirements of § 784.7 were met under the statute and Petitioner forfeited his right to object to the trial in San Diego County for the offense which occurred in Ventura County; (2) section 784.7 is an exception to the general rule of venue and has authorized the prosecution to elect a county as an alternative venue for trial of the offenses occurring in a different county as long as one of the offenses joined in the accusatory pleading occurred in the elected county; (3) section 784.7's application to Petitioner's offenses does not offend ex post facto protections because it did not increase the sentence beyond the term that applied when the crime was committed; (4) the prosecution of Petitioner as to Count three was not time barred because the statute of limitations was extended before the time for prosecuting Petitioner's crime had expired; and (5) there was substantial evidence for a jury to find Petitioner had exerted force over the victim's rejection of his sexual advances in Count two. (Lodgment 8 at 5-17.)  Petitioner appealed to the Supreme Court of California, but his Petition for Review was summarily denied on June 13, 2007. (Lodgment 10.)

**C.   Federal Court Proceedings**

Petitioner then filed the instant Petition on September 3, 2008.  (Doc. No. 1.)  On December 3, 2008, Respondent filed an Answer to Petition for Writ of Habeas Corpus. (Doc. No. 6.)  Petitioner did not file a traverse following the Answer to the Petition in this case.

**III.**

**STANDARD OF REVIEW**

Title 28 U.S.C. § 2254(a), allows for review by a district court of "the judgment of a State court only on the ground that [the habeas petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2009).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996.  Lindh v. Murphy, 521 U.S. 320, 336 (1997).  The current petition was filed in 2008 and, as such, is governed by the AEDPA.  As amended by the AEDPA, 28 U.S.C. § 2254(d) reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2009).   The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  As such, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, quoting 28 U.S.C. § 2254(d)(1). In ascertaining "clearly established Federal law," the Court looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." Id. (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).  The Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th Cir. 1999).  However, this Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Williams, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.' Id. at 409.

Lastly, this Court notes the AEDPA requires that this Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1)(2009). Moreover, this Court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003). Where, as here, there is no reasoned decision from the state's highest court to review, a federal court "looks through" the silent state supreme court decision to the "last reasoned opinion" issued in the state's courts. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.) In Petitioner's case, the California Supreme Court denied Petitioner's appeal without comment. (Lodgment 10.) Therefore, in reviewing Petitioner's claims, this Court looks to the reasoned opinion by the Court of Appeal for the State of California, Fourth Appellate District, dated February 28, 2007–filed with this Court as Lodgment 8–which denied Petitioner's direct appeal. See Ylst, 501 U.S. at 801-06. The Court reviews that decision to determine whether it was contrary to, or involved an unreasonable application of clearly established federal law or whether it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

## IV.

## DISCUSSION

**A.   Claim One: Failure to Meet Requirements of California Penal Code § 784.7 Regarding Proper Venue**

Petitioner contends the Court of Appeal's decision, as to this claim, which held the procedural requirements of § 784.7 were met under the statute because Petitioner forfeited his right to object to the trial in San Diego County for the offense which occurred in Ventura County violated his due process rights. (Doc. No. 1 Pet. 6.) Petitioner argues the Court of Appeal erred in its holding because the prosecution failed to move for the required hearing under Penal Code § 954 and offered no proof that the district attorneys in both counties had consented to a trial of the Ventura County offense in San Diego County. (Id. Ex. 1, 15-16.) Petitioner further argues that the burden to move for such a hearing

to determine appropriate venue rests upon the prosecution as the party seeking joinder. (Id. at 17.) However, Petitioner points to no federal case law or constitutional provision to support his claim.[2]

Federal habeas relief may be granted only for violations of federal law and will not be granted for erroneous applications of state law. See Engle v. Isaac, 456 U.S. 107, 119 (1982). Federal courts are not designed to sit as additional appellate reviewers of the judgments of state courts. See e.g., Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003) (stating that the Rooker-Feldman doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment). As a general rule, the interpretation of state law is a matter best left to the state courts. See Milton v. Wainwright, 407 U.S. 371, 377 (1972). Federal courts should follow the state court's interpretation of state law. See California v. Freeman, 488 U.S. 1311 (1989).

Here, Petitioner is challenging the venue of San Diego County for an offense that occurred in Ventura County. Petitioner's claim is entirely based on application of California Penal Code § 784.7 which states:

> (a) When more than one violation of Section 220 ... 261, 262, 264.1, 269, 286, 288, 288a, 288.5, or 289 occurs in more than one jurisdictional territory, the jurisdiction of any of those offenses, and for any offenses properly joinable with that offense, is in any jurisdiction where at least one of the offenses occurred, subject to a hearing, pursuant to Section 954, within the jurisdiction of the proposed trial. At the Section 954 hearing, the prosecution shall present evidence in writing that all district attorneys in counties with jurisdiction of the offenses agree to the venue.

Cal. Pen. Code § 784.7 (2008). Petitioner argues the requisite hearing pursuant to § 954 never took place and no evidence of agreement to venue by the district attorneys of both counties was presented, therefore, venue was improper in Petitioner's trial as to one of the charges. (Doc. No. 1 Ex. 1, 17-18.) The Court of Appeal held, as to this claim, that under People v. Simon, a defendant who fails to raise a timely objection to venue in a felony proceeding forfeits the right to object to venue either at trial or on appeal. (Lodgment 8 at 8.) (citing People v. Simon, 25 Cal.4th 1082, 1104 (2001). The Court of

---

2. Petitioner submits to the Court a standard Petition for Writ of Habeas Corpus form (CIV 68) setting forth five claims for relief. (See Doc. No. 1.) In support of his contentions as to each claim, Petitioner submitted a copy of Appellant's Opening Brief previously filed in the California Court of Appeal for direct review of Petitioner's judgment and conviction in Superior Court. (See Doc. No. 1 Ex. 1; see also Lodgment 4.) The Court notes the Opening Brief setting forth contentions in support of Petitioner's claims is entirely based on applications of California state law. Therefore, in its discretion and where appropriate, the Court interprets Petitioner's claims under applicable principles of federal law.

Appeal found that although Petitioner's attorney did object to the prosecution of Petitioner for the offense at issue, at the preliminary hearing, he did not raise the issue of the requisite § 954 hearing and thus waived the issue for appeal. The Court explained that based on the record, at the preliminary hearing, Petitioner's attorney did not explicitly mention the "written agreement" element of § 784.7. (Lodgment 8 at 8.) Had the issue been raised at the preliminary hearing, then a hearing pursuant to § 954 would have been held and the District Attorney would have been required to present the written agreement in accordance with § 784.7. The Appellate Court specifically determined:

> We conclude Loi's objection at the preliminary hearing to the absence of 'evidence...giving San Diego County authority to prosecute the offense' was inadequate to preserve the issue for appeal. First, *Simon's* reference to the means for raising and preserving the issue included its citation with approval to *People v. Remington* (1990) 217 Cal.App.3d 423. [citation omitted] In *Remington*, the court ruled that merely mentioning a venue objection at the preliminary hearing, but thereafter not raising it by motion in the superior court after the defendant had been bound over for trial, was a waiver of the issue. [citation omitted.] Second, the statutory language of section 784.7 specifies the procedure for interposing the *lack of written agreement* objection, because it provides that venue for all joined offenses is proper in any county in which one of the offenses occurred '*subject* to a hearing, pursuant to Section 954' and that '[a]t the Section 954 hearing, the prosecution shall present evidence in writing' of the agreement to venue by the other district attorneys. (§784.7, subd. (a).) We construe section 784.7 to permit joinder of extra-territorial offenses as an exception to the ordinary statutory venue rules, and places the onus on the defendant (if he or she wishes to seek to have the case tried in the county of its commission) to institute a section 954 motion to sever, but the prosecutor can defeat a request for severance by producing written evidence of agreement from the other county.

Lodgment 8, 9-10.)(emphasis in original.)

The reasoned Opinion of the California Court of Appeal is an interpretation of California state law and such interpretation is a matter best left to the state courts. See Milton, 407 U.S. at 377. Petitioner has presented no argument stating that the Court of Appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner has also not alleged that the Court of Appeal's ruling "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In sum, Petitioner's claim does not raise a federal issue. The Court therefore recommends this claim be DENIED.

**B.     Claim Two: Unconstitutionality of California Penal Code § 784.7**

Petitioner alleges that the vicinage guarantee of the Sixth Amendment was violated because he was tried in San Diego County for the offense in count three; a county in which he alleges no part of the crime occurred. (Doc. No. 1 Pet. 19-23.)  Petitioner acknowledges the California Supreme Court previously held that the Vicinage Clause of the Sixth Amendment is not made applicable to the states via the Fourteenth Amendment in Price v. Superior Court, 25 Cal.4th 1046 (2001),[3/] but argues that the reasoning of Price is flawed and § 784.7, at issue here, was revised after the Court's 2001 holding.  (Id.) However, Petitioner fails to acknowledge, or apply, the relevant AEDPA standard of review to the instant petition.

The Vicinage Clause guarantees a person accused of a crime "the right to a . . . jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI.  In Stevenson v. Lewis, 384 F.3d 1069, 1070 (9th Cir. 2004), the Ninth Circuit affirmed a district court decision denying habeas relief sought on Vicinage Clause grounds. The court determined that while the Supreme Court has held that certain provisions of the Sixth Amendment extended to the states through the Fourteenth Amendment, it has not reached the question of whether the Vicinage Clause applies to the states. Id. at 1071. Further, the Stevenson Court explained, "if there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law." Id. at 1071.  Accordingly, the state court's decision in Stevenson could not have been "contrary to, or an unreasonable application of, clearly-established federal law." Id.

This Court concludes that Petitioner has failed to show the state court's adjudication of his vicinage rights claim satisfies the AEDPA standard for habeas relief. In deciding the merits of Petitioner's vicinage claim, the California Court of Appeal adhered to the holding of the California Supreme Court

---

3. The Court in Price specifically determined: "Because the history of the Fourteenth Amendment does not indicate an intent to incorporate the vicinage clause of the Sixth Amendment, and vicinage today is not a fundamental aspect of the right to jury trial necessary to ensure a fair trial, we conclude that the vicinage clause is not applicable in a state criminal trial." Price, 25 Cal.4th at 1069.

in Price v. Superior Court. (Lodgment 8 at 10.) The Court of Appeal held:

> Loi argues that section 784.7, by authorizing (subject to certain conditions and procedures) the prosecution in one county of an offense committed in a different county, transgresses his rights under the Sixth Amendment to the United States Constitution and is therefore unconstitutional. This precise argument was raised in and rejected by the court in *Price v. Superior Court*[,] which concluded section 784.7 [] did not offend the Sixth Amendment's vicinage protections. Loi notes the statute was amended after *Price* but articulates no basis for concluding these statutory changes obviate the analysis of *Price*. Accordingly, we must adhere to *Price* [] and reject Loi's claim.

(Lodgment 8 at 10.) The Court of Appeal explicitly adhered to the holding of Price in rendering its decision. As the United States Supreme Court has not extended federal constitutional vicinage rights to the states at the time of the Court of Appeal decision, the California Court of Appeal's holding could not have been "contrary to, or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Petitioner has also failed to show that the Court of Appeal's decision was based upon an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," within the meaning of 28 U.S.C. § 2254(d)(2).

Under these circumstances, Petitioner is not entitled to relief on this claim. The Court, therefore, recommends this claim be DENIED.

**C.   Claims Three and Four: Ex Post Facto Application of California Penal Code §§ 784.7 and 801.1**

   1.   Retroactive Application of California Penal Code § 784.7

The Supreme Court has summarized the meaning of the Ex Post Facto Clause as follows:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

Beazell v. Ohio, 269 U.S. 167, 169-170 (1925) (aff'd Collins v. Youngblood, 497 U.S. 37, 42 (1990)). The Court has also held that no ex post facto violation occurs if the change effected is merely procedural, and does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." Hopt v. Utah, 110 U.S. 574, 590 (1884); see also Dobbert v. Florida, 432 U.S. 282, 293 (1977). However, although procedural changes may not offend the Ex Post Facto Clause, a legislature does not "immunize" a law from scrutiny under the Ex Post Facto Clause

simply by labeling it "procedural." Id. at 46. Because the purpose of the Ex Post Facto clause is to provide fair warning of penal statutes and prevent arbitrary and oppressive legislation, the Court has explained that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must *disadvantage* the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981) (emphasis added).

Whether the retrospective state statute ameliorates or worsens conditions imposed by its predecessor is a federal question. Weaver, 450 U.S. at 33; accord Lindsey v. Washington, 301 U.S. 397, 400 (1937). The critical inquiry is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence. Weaver, 450 U.S. at 32. In Dobbert v. Florida, 432 U.S. 282 (1977), the Court held there was no ex post facto violation because the challenged provisions changed the role of jury and judge in sentencing, but did not add to the "quantum of punishment." Dobbert, 432 U.S. at 293-294. Moreover, there is no ex post facto violation where a prisoner is substantially benefitted by the statute as a whole. Chatman v. Marquez, 754 F.2d 1531 (9th Cir.), cert. denied, 474 U.S. 841 (1985). The Ninth Circuit has also held that where a state court opinion which construes state law is applied retroactively, the ex post facto prohibition does not apply, unless the judicial opinion and construction of the state law is not foreseeable. Holguin v. Raines, 695 F.2d 372, 373-74 (9th Cir. 1982), cert. denied, 464 U.S. 896 (1983)

Here, Petitioner challenges the application of California Penal Code § 784.7 because it effectively increased his sentence beyond the term that applied when the crime was committed in 1997. (Lodgment 8, 10-11.) Petitioner specifically argues:

> under the statutory scheme applicable in 1997, trial of count 3 could not have been joined with the other charges, and therefore his sentence on count 3 (for violating 288a, subd. (c)(2)) would have been limited to a determinate term of three, six or eight years. However, because section 784.7 permitted the prosecution to join trial of count 3 with the other counts, his sentence for count 3 was increased under the "One Strike" law ( 667.61) by triggering subdivision (e)(5), which provides a 15-year-to-life sentence ( 667.61, subd. (b)) for a defendant who "has been convicted in the present case or cases of committing [a qualified sex offense] against more than one victim." ( 667.61, subd. (e)(5).)[4]

(Lodgment 8 at 10.) (footnote omitted.) The Court of Appeal acknowledges § 784.7 was enacted in 2002, however, the Court determined:

---

4. All statutory references are to the California Penal code. (Lodgment 8 at 1, fn. 1.)

> Section 784.7, although altering procedural methods, did not increase the quantum of punishment for Loi's section 288a conviction beyond the term potentially applicable at the time the crime was committed in 1997. The "One Strike" law, as it existed in 1997, provided a potential maximum term of 25 years to life if the defendant was convicted of a section 288a offense and the jury found he had a prior conviction for violating section 288a. (See Stats. 1994, ch. 447, 1.) Accordingly, even had section 784.7 not been invoked, Loi could have been tried separately for the Ventura County offense in Ventura after his trial on and conviction for the San Diego crimes, and the resulting conviction for the Ventura County offense would have triggered a potential maximum sentence of 25 years to life, a sentence greater than he incurred as a result of procedural changes implemented by section 784.7's joinder provisions. For this reason, we are convinced section 784.7's application to Loi does not offend ex post facto protections.

(Lodgment 8 at 13.) The court specifically analyzed the punishment applicable to Petitioner's offense at the time the offense was committed and at the time he was convicted and sentenced to his term in prison. The Court of Appeal effectively concluded that Petitioner did not receive a punishment greater than what was applicable at the time he committed the offense. In essence, no ex post facto violation occurred because the change effected by application of the revised § 784.7 was merely procedural, and did not "increase the punishment." See Hopt v. Utah, 110 U.S. 574, 590 (1884); see also Dobbert v. Florida, 432 U.S. 282, 293 (1977).

Moreover, the Court of Appeal's interpretation of California Penal Code section 784.7 as pertaining to this case is an interpretation of state law. The Court of Appeal rejected the claim, stating that § 784.7 merely altered procedural methods and did not increase the quantum of punishment for Petitioner's conviction beyond the term potentially applicable at the time the crime was committed. (Lodgment 8 at 12.) A state court's interpretation of its own law does not raise an issue cognizable on federal habeas unless the state court's interpretation is "clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." Lopez v. Schriro, 491 F.3d 1029 (9th Cir. 2007) (internal quotation, citation omitted). An interpretation of state law, even one announced on direct appeal of the challenged conviction, usually binds a federal court. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Here, the Court of Appeal's decision effectively interpreted the application of § 784.7 to Petitioner's trial and conviction. Moreover, the decision was not "contrary to, or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Petitioner has presented

nothing suggesting that the Court of Appeal's interpretation of the state law relating to § 784.7 is untenable. Petitioner is not entitled to habeas relief on this claim.

    2.    <u>Statutory Extension of the Statute of Limitations (California Penal Code § 801.1)</u>

In his fourth claim, Petitioner claims California Penal Code section 801.1 is an unconstitutional ex post facto law as applied to the prosecution of his 1997 offense because at the time he committed the offense, the applicable statute of limitations for prosecution was six years. California Penal Code § 801.1, applicable at the time of Petitioner's conviction, extended the statute of limitations to ten years but was enacted in 2004. Therefore, Petitioner argues the prosecution for the offense committed in 1997 was time barred at the time of trial.

Penal Code § 801.1 states:

> § 801.1. Ten-year limitation for specified sex offenses; Exception for minor victims
> (a) Notwithstanding any other limitation of time described in this chapter, prosecution for a felony offense described in Section 261, 286, 288, 288.5, 288a, or 289, or Section 289.5, as enacted by Chapter 293 of the Statutes of 1991 relating to penetration by an unknown object, that is alleged to have been committed when the victim was under the age of 18 years, may be commenced any time prior to the victim's 28th birthday.
> (b) Notwithstanding any other limitation of time described in this chapter, if subdivision (a) does not apply, prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense.

Cal. Pen. Code § 801.1 (2008). Petitioner was convicted of criminal conduct falling within section 801.1 committed between March 1 and March 31, 1997. Charges were brought against Petitioner on October 8, 2004, outside of the six-year limitations period imposed by section 800 of the California Penal Code. Therefore, the charges would have been dismissed but for the extension of the limitations period by section 801.1.

However, the California Court of Appeal found no ex post facto bar to the charges on which petitioner was tried and convicted. (<u>See</u> Lodgment 8, 13-14.) The Court relied primarily on <u>Stogner v. California</u>, 539 U.S. 607 (2003), which limited its holding to situations where the statute of limitations had already run for prosecution. <u>See</u> Lodgment 8, 14. The Court of Appeal cited Stogner as stating: "<u>Stogner</u> expressly states its holding 'does not prevent the State from extending time limits for the prosecution of future offenses, or for prosecutions not yet time barred.'" <u>Id.</u> (quoting <u>Stogner</u>, 539 U.S. at 632). Based on this reasoning, the Court of Appeal found that:

> In 2000, before the six-year statute had run on Loi's 1997 offense, the limitations for section 288a offenses was extended to 10 years by the enactment of former section 803, subdivision (h)(1). (Stats. 2000, ch. 235, 1.) In 2004, the legislature enacted section 801.1 and amended former section 803, subdivision (h)(1), which, as is relevant here, effectively moved the existing 10-year statute of limitations from section 803, subdivision (h)(1) to section 801.1. (See Stats. 2004, ch. 368, 1, 2.) Because the 10-year statute of limitations was extended before the time for prosecuting Loi's crime had expired, the present prosecution is not precluded by ex post facto principles.

(Lodgment 8, 14.) Essentially, as applied to Petitioner's case, section 801.1 operated as an extension of the unexpired six-year statute of limitations which had been extended by former section 803(g) and was therefore not unconstitutional. Id. This Court agrees with the construction given to the statute by the California Court of Appeal.

That the Court of Appeal's holding is correct is further supported by a closer analysis of Stogner. There, the Supreme Court held that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." Stogner, 539 U.S. at 632-33. The Court found section 803(g) to be an ex post facto law as applied to pre-1988 molestations because the limitations period had expired prior to enactment of the statute. Id. generally. The Court gave two reasons for its holding. First, the Court found that the statute threatened the kind of harm that the Ex Post Facto Clause seeks to avoid because it had a "manifestly unjust and oppressive retroactive effect[]." Id. at 611 (internal quotations omitted). "[E]xtending a limitations period after the State has assured a man that he has become safe from its pursuit . . . seems to most of us unfair and dishonest." Id. (citation and internal quotations omitted). Doing so deprives the defendant of fair warning that may have led the defendant to preserve exculpatory evidence. Id.

As a second reason, the Court found that the law fit within one of the classic definitions of an ex post facto law because it "aggravates a crime, or makes it greater than it was when committed." Id. at 613 (quoting Calder v. Bull, 3 U.S. 386, 390 (1798)). The Court elaborated that the statute is such a law as applied to pre-1988 conduct because it "inflict[s] punishments, where the party was not, by law, liable to any punishment." Id. (quoting Calder, 3 U.S. at 389). This type of law was contrasted with laws that bring about a "[r]etroactive extension of unexpired statutes of limitations." Id. at 630-31. Those laws do not offend the Ex Post Facto Clause in light of "history, case law, and constitutional purposes." Id.; see also United States v. Bischel, 61 F.3d 1429, 1435-36 (9th Cir. 1995).

The distinction drawn by the Supreme Court makes clear that the California Court of Appeal reasonably interpreted section 801.1 as an "extension" statute as applied against pre-2004 offenses, and not as an unconstitutional "revival" statute. The statute does not, as applied here, inflict a punishment where the defendant previously was not liable for one because the statute of limitations had not yet run on the 1997 offense at the time the first extension statute, section 803(h)(1) was enacted in 2000. As noted above, Stogner expressly stated it did not "prevent the State from extending time limits . . . for prosecutions not yet time-barred." Stogner, 539 at 632. Contrary to Petitioner's argument, the statute does not authorize a previously-barred criminal prosecution; the prosecution for the 1997 offense would only be time-barred after March 2007 following the enactment of section 803(h)(1). Prior to that moment, there was not one microsecond in which Petitioner was ever safe from prosecution under the statutory scheme. The enactment of section 801.1 in 2004, imposed the same statute of limitations upon Petitioner's offense as the former section 803(h)(1), which was enacted when *Petitioner's prosecution was not yet time barred.*

In finding section 801.1 extended the limitations period before it expired as applied to Petitioner's 1997 offense, the state appellate court ruling was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent as defined by Stogner. Although Petitioner may dispute the applicability of section 801.1 to his case, the California Court of Appeal's reading of the interplay between sections 803(h)(1) and 801.1 is presumably correct and this Court must show deference to that court's interpretation of state law. See New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 701 (9th Cir. 1991) (Federal courts are bound to state court interpretations of state law unless they are convinced that the highest court of the state would decide otherwise.); see also Murtishaw v. Woodford, 255 F.3d 926, 964-65 (9th Cir. 2001) (In applying federal ex post facto prohibition to state law, a federal court accepts the meaning ascribed to the state law by the state's highest court.). The California Court of Appeal's interpretation of section 801.1 is entirely reasonable and a fair indication of how the California Supreme Court would view the statute. Therefore, Petitioner's ex post facto challenge fails. Petitioner is not entitled to relief on this claim.

### E. Sufficiency of the Evidence

Lastly, Petitioner argues the evidence was insufficient evidence to sustain his conviction for attempted forcible oral copulation (Count 2) because he never employed threats, duress, violence or any means of physical contact, other than the attempt to unzip the victim's pants. (Doc. No. 1 Ex. 1, 30.) Petitioner contends "force" as used in the applicable statute, section 288a(c)(2), means physical force substantially different or in excess of what is required for the act itself. (Id.) (citing People v. Senior, 3 Cal.App.4th 765, 773 (1992).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[5] Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02, (1993). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds," because the court must apply the Jackson standard with an extra layer of deference to the state court's determination, as mandated by the AEDPA. Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005), cert. denied, 546 U.S. 1137 (2006). In order to

---

5. Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.  Moreover, the federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

Regarding the sufficiency of the evidence, the California Court of Appeal stated::

> Loi asserts that, under *People v. Senior* (1992) 3 Cal.App.4th 765, a defendant does not employ force within the meaning of the forcible oral copulation statute unless he employs " ' "physical force substantially different from or substantially in excess of that required for the [proscribed sexual act]." ' "  (*Id.* at p. 774, quoting *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1158.) Loi asserts that because there is no evidence he attempted to engage in any act apart from the physical contact inherently required to prepare for engaging in the sexual act itself, the evidence is insufficient to support a finding that he attempted to employ force within the meaning of section 288a.
>
> However, *Quinones* derived its test for "force" (e.g. requiring there be "physical force substantially different from or substantially in excess of that required for the [sexual] act") by citing and relying on the dissent in *People v. Cicero* (1984) 157 Cal.App.3d 465, 487-488 (dis. opn. of Regan, J.) (see *People v. Quinones*, *supra*, 202 Cal.App.3d at p. 1158), and the court in *Griffin* expressly disapproved use of the *Cicero* formulation for determining whether "force" was used in the context of a forcible rape case. (*People v. Griffin*, *supra*, 33 Cal.4th at p. 1028.) Because we agree with the analysis of *People v. Guido*, *supra*, 125 Cal.App.4th 566, and its conclusion that "there is no reasoned basis to apply a different concept of the term 'force' to forcible rape and forcible oral copulation" (*id.* at p. 576), we conclude *Griffin* has sub silencio disapproved *People v. Senior*, *supra*, 3 Cal.App.4th 765.
>
> Instead, we must evaluate whether there is substantial evidence that Loi made a direct but ineffectual effort to employ force to overcome Audrey's will to resist his attempt to orally copulate her. Here, Loi's initial effort to solicit her cooperation (by trying to unzip her pants) was rebuffed by Audrey's physical acts (of pushing his hands away from her and by standing up to place distance between them) and by her verbal commands that he immediately leave. While Loi's initial act may alone have been inadequate to support a conclusion that he attempted to employ force to overcome her will, Loi chose to ignore her stated contrary will by standing and approaching her in a more agitated state and "more forcibl[y]" putting his hands on her pants to try to unzip them. Loi's continuing conduct provides substantial evidence for a jury to find Loi attempted to employ some degree of force to overcome her stated rejection of his sexual advances, and therefore Loi's conviction for attempted forcible oral copulation is supported by the evidence.

(Lodgment 8, 16-17.)  The court noted that, under California law, the force required in adult sexual crime cases is only that force which is necessary to overcome the victim's will, not more force than is necessary to accomplish the act. (Id.)  The term "force," as used an § 288a(c)(2), "simply plumbs the line between consensual and non-consensual adult sexual activity." People v. Guido, 125 Cal.App. 4th 566, 576, (3rd. Dist. 2005).

Relying on the victim's testimony, Petitioner argues that there was no evidence of use of force, violence, fear, or duress. (Doc. No. 1 Ex. 1, 30.) Viewing the facts in the light most favorable to the prosecution, as this court must, the court cannot agree with petitioner. See Jackson, 443 U.S. at 319. The following facts were adduced at trial with respect to the forced oral copulation charged in Count two: (1) the victim's testimony at trial showed that Petitioner made the initial effort to solicit her cooperation in carrying out the proscribed sexual act and was rebuffed by the victim's physical acts and by her verbal commands that he immediately leave (Lodgment 8, 17); (2) the victim became adamant that he should leave but Petitioner made a second attempt to unzip her pants (Tr. 263, 265.); (3) Petitioner "became agitated after a second attempt to unzip her pants. (Tr. 265.)

The state court did not apply Jackson unreasonably because there was ample evidence from which a jury could determine Petitioner used force in accomplishing the act of attempted forcible oral copulation. The court of Appeal determined the standard for "force" in the context of forcible oral copulation is "a direct but ineffectual effort to overcome [the victim's] will to resist his attempt to orally copulate her." (Lodgment 8, 16.) In analyzing this standard, the Court concluded that there was sufficient evidence that Petitioner made a direct effort to overcome the victim's will because he attempted to unzip her pants twice, over her repeated objections. Petitioner also rebuffed the victim's repeated requests to leave her apartment. As Petitioner did not testify at trial, there is no evidence to contradict the victim's statement. This evidence is ample support for the verdict and is set out in the Court of Appeal's decision. (Lodgment 8, 15-17.)

In light of the foregoing facts, and coupled with the victim's statements that she was afraid (Tr. 264) and felt threatened (Tr. 275), any reasonable jury could have concluded that petitioner used force in an attempt to perform the act of forced oral copulation. The court finds that the state court's denial of these related claims was neither contrary to nor an unreasonable application of clearly established law. Petitioner is not entitled to relief on this claim.

//
//
//
//

## IV.

## CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Barry T. Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **July 20, 2009** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 3, 2009.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: June 29, 2009

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Barry T. Moskowitz
    All Parties and Counsel of Record